**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BRYON K. R., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 17-cv-477-JPG-CJP |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Bryon K. R., represented by counsel, seeks review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for disability benefits in April 2013, alleging disability beginning on March 28, 2012. After holding an evidentiary hearing, ALJ Scott Gulick denied the application on April 22, 2016. (Tr. 19-32.) The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final agency decision subject to judicial review. (Tr. 1.)

Plaintiff has exhausted administrative remedies and has filed a timely complaint.

### Plaintiff's Arguments

Plaintiff makes the following arguments:

1. The ALJ failed to properly consider plaintiff's RFC in that he ignored medical evidence regarding plaintiff's ability to interact with other people and limitations in his ability to maintain concentration, persistence and pace.

2. The ALJ did not properly assess the reliability of plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms.

1

3. The ALJ failed to list impulse control disorder as a severe impairment at Step 2 and failed to consider the combined effects of all of plaintiff's mental impairments.

**Legal Standards**

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.[1]

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is

---

[1] The legal standards for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) are largely the same. The above paragraph in this order cites the relevant statutory provisions for DIB, while the SSI provisions are located at 42 U.S.C. §§ 1382c(a)(3)(A), 1382c(a)(3)(D), and 20 C.F.R. § 416.972. Most citations herein are to the DIB regulations out of convenience, but also apply to SSI challenges.

able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

**The Decision of the ALJ**

ALJ Gulick followed the five-step analytical framework described above. He determined that plaintiff had not engaged in substantial gainful activity since the alleged date of onset, and that he was insured for DIB only through June 30, 2012.[2]

The ALJ found that plaintiff had severe impairments of diabetes, osteoarthritic changes of the medical compartment, personality disorder, major depression, and bipolar disorder, and that

---
[2] The date last insured is relevant only to the claim for DIB.

3

these impairments do not meet or equal a listed impairment.

ALJ Gulick concluded that plaintiff had the residual functional capacity to perform work at the light exertional level with a number of physical limitations. In addition, he had the following mental limitation:

[T]he individual can occasionally interact with supervisors, co-workers, and the public.[3]

Based on evidence from a vocational expert (VE), the ALJ determined that plaintiff could not do his past work, but he could perform other jobs which exist in significant numbers in the national and local economies, and, therefore, he was not disabled.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the plaintiff's arguments, which concern only his mental impairments.

**1. Agency Forms**

Plaintiff was born in 1964 and was 47 years old on the alleged date of disability. (Tr. 358.) He said that he was disabled because of bipolar disorder. He stopped working in February 2007. He said he was fired because he was not getting along with other members of the staff. He had worked as a restaurant cook. (Tr. 362-364.)

In May 2010, plaintiff reported that he had mood swings and did not trust others. He had insomnia and "sometimes hostile behavior towards others." He suffered from emotional exhaustion and stress. (Tr. 388.) He was taking Prozac, which caused headaches, memory loss and insomnia. (Tr. 395.)

**2. Evidentiary Hearing**

---
[3] The agency defines occasional as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5.

4

Plaintiff was represented by counsel at the hearing in January 2016. (Tr. 41).

Plaintiff testified that he was fired from his last job in 2007 because he got violent with a female co-worker. He said he could not work because of a bad knee and because he had "bouts of depressions and I just don't want to be around anybody and that's basically what I do, I just stay home." He had been diagnosed with bipolar disorder. He had insomnia. He had a hard time controlling his temper when he was stressed. He could not handle being around people and could not get along with people. He had these symptoms pretty much all of the time and had been like that for years. (Tr. 45-46.)

A vocational expert (VE) also testified. The ALJ asked him a hypothetical question which corresponded to the RFC assessment. The VE responded that this person could not do plaintiff's past work, but he could do other jobs such as sorter, bench assembler, and nuts and bolts assembler. However, if he were off-task for at least fifteen percent of the work day, he would not be employable. (Tr. 56-60).

### 3. Medical Records

Plaintiff's primary care doctor diagnosed him with depression in March 2010. His symptoms included depressed mood, diminished interest in usual activities, insomnia, psychomotor agitation or retardation, and impaired concentration. He was prescribed Prozac. (Tr. 608-610.) In late July 2010, he was on a waiting list for a psychiatrist who would take his medical card. He was angry all the time and was unable to sleep. He felt suicidal or homicidal at times. He was told to continue taking Prozac and to add Klonopin. (Tr. 600-601.)

Plaintiff went to the emergency room with suicidal and homicidal ideation in August 2010. He said he had been hostile and had a bad temper all his life. He had been clean from alcohol for five months and had used marihuana a month ago. He had a life-long history of anger problems

5

which he attributed to bipolar disorder, but he had not been diagnosed and was not receiving any psychiatric care. His primary care physician had prescribed Zoloft and Prozac. He had depression marked by crying spells, chronic insomnia, anhedonia, guilt, suicidality intermixed with racing thoughts, as well as going off on tangents and mood swings. He was admitted to the psychiatric unit and was prescribed Celexa and Abilify. He was discharged on August 9, 2010, and was to follow up with Dr. Oyemade. The diagnoses were bipolar affective disorder; alcohol dependence in slow, early remission; marihuana abuse, in partial remission; and personality disorder. (Tr. 568-572.)

Plaintiff first saw Dr. Oyemade, a psychiatrist, in late August 2010. Dr. Oyemade practiced at Southern Illinois Healthcare Foundation. Plaintiff had a history of mood swings, periods of irritability, low frustration tolerance, racing thoughts, problems sleeping, and depression. Dr. Oyemade diagnosed bipolar disorder, alcohol and cannabis dependence in remission, and rule out posttraumatic stress disorder. She increased the dosage of Abilify and continued him on Celexa. (Tr. 593-596.)

Plaintiff went to the emergency room because of suicidal depression on December 30, 2010. He was admitted to the hospital. He had a long history of suicidal thoughts and had attempted suicide three times. He was taking Abilify, which was discontinued during the hospitalization because he had akathisia (a movement disorder). He was treated with medication and therapy and was discharged on January 4, 2011. The diagnoses were major depression, recurrent, moderate; akathisia from Abilify, resolved; and personality disorder not otherwise specified. (Tr. 562-566.)

Plaintiff continued to receive mental health treatment at Southern Illinois Healthcare Foundation through October 2015. He was seen by Dr. Oyemade, a nurse practitioner, or Dr.

6

Aregood on about thirty-one visits. The records from Southern Illinois Healthcare Foundation reflect that plaintiff's symptoms waxed and waned. (Tr. 575-595, 627-635, 682-704, 719-773, 812-872.)

Dr. Aregood noted symptoms of difficulty concentrating and memory issues on several visits. (*See, e.g.*. Tr. 838, 842, 855, 859, 863.) She also noted that plaintiff brought up the same issues at multiple visits and did not seem to remember what they had discussed on previous visits. (Tr. 863, 871). In April 2014, she diagnosed impulse control disorder along with bipolar disorder. (Tr. 865). At several visits in 2014 and 2015, on mental status exam, Dr. Aregood noted that plaintiff's memory was impaired. (Tr. 840, 843, 846, 849, 854.)

Plaintiff also attended counselling sessions at Southern Illinois Healthcare Foundation with a social worker named Jessica Epperson. At the last session, in October 2015, she noted that plaintiff continued to use "coping skills when enraged of walking away from the situation." Plaintiff reported "increase in mania including engaging in risky behaviors and grandiose and impulsive behaviors." Ms. Epperson recorded that plaintiff made inappropriate comments and an inappropriate physical advance to her. (Tr. 884.)

Harry Deppe, Ph.D., performed a consultative psychological exam in August 2013. He spent about 45 minutes with plaintiff. He did not review any mental health treatment records from Southern Illinois Healthcare Foundation. He diagnosed polysubstance dependence in remission; major depression, recurrent; and personality disorder, not otherwise specified. He concluded that plaintiff had fair ability to relate to others, to understand and follow simple instructions, to maintain attention required to perform simple, repetitive tasks, and to withstand the stress and pressures of day-to-day work. (Tr. 707-710.)

4.   **Dr. Oyemade's Opinion**

In November 2011, Dr. Oyemade assessed plaintiff's mental functional capacity by completing a form. She said that plaintiff's symptoms included poor memory, mood disturbance, social withdrawal, decreased energy, and manic syndrome. She said that plaintiff would have difficulty working fulltime because of fragile mood, low frustration tolerance, irritability, mood swings, and diminished concentration and attention. She assessed marked difficulties in maintaining social functioning and frequent difficulties in maintaining concentration, persistence, or pace. She said he would have poor ability to follow work rules, deal with the public, deal with work stresses, maintain concentration and attention, and behave in an emotionally stable manner. (Tr. 622-626.)

## Analysis

Plaintiff argues that the ALJ ignored medical evidence regarding plaintiff's ability to interact with other people and limitations in his ability to maintain concentration, persistence and pace.

First, the Court must point out that the ALJ failed to discuss Dr. Oyemade's opinion. Dr. Oyemade is a psychiatrist who treated plaintiff. Under the regulation applicable to this claim, her opinion may well have been entitled to controlling weight; if not, the ALJ was required to explain the weight he assigned to it. 20 C.F.R. §404.1527.

Plaintiff is correct that the ALJ erred in selectively considering the evidence of his mental health treatment. His discussion of that treatment downplayed the severity of his symptoms and highlighted the positive. (*See* Tr. 25-26.) As was noted above, the records indicated that plaintiff's symptoms waxed and waned. The Seventh Circuit has recognized that this is commonly seen in people who suffer from bipolar disorder. "The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation

that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

ALJ Gulick did not fairly consider the medical records, especially Dr. Aregood's notes regarding plaintiff's memory and concentration problems. An ALJ is not permitted to "cherry-pick" the evidence in this way, ignoring the parts that conflict with his conclusion. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). While he is not required to mention every piece of evidence, he "must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000).

Plaintiff is also correct that the ALJ did not give good reasons grounded in the evidence for his adverse credibility determination.

The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

The ALJ did not cite to SSR 16-3p, which supersedes the previous SSR on assessing a claimant's credibility.[4] SSR 16-3p can be found at 2016 WL 1119029. SSR 16-3p became effective on March 28, 2016. See, 2016 WL 1237954, setting forth the effective date. SSR 16-3p points out that the regulations do not use the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." 2016WL1119029, at *1. SSR

---

[4] SSR 16-3p supersedes SSR 96-7p, also not cited by the ALJ. Instead, he cited to SSR 96-4p (Tr. 21), which is not relevant to the credibility determination.

16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529.

The ALJ is required to give "specific reasons" for his credibility findings. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). It is not enough just to describe the plaintiff's testimony; the ALJ must analyze the evidence. *Ibid*. See also, *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (The ALJ "must justify the credibility finding with specific reasons supported by the record.") If the adverse credibility finding is premised on inconsistencies between plaintiff's statements and other evidence in the record, the ALJ must identify and explain those inconsistencies. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Here, the reasons given by the ALJ for rejecting plaintiff's statements are not supported by the record and are not valid. First, of course, the ALJ ignored much of the medical evidence that was consistent with plaintiff's allegations. Further, the ALJ supported his determination by describing plaintiff's treatment as "routine." (Tr. 26). Plaintiff was treated with two inpatient hospitalizations, a number of medications, regular visits to psychiatrists, and regular outpatient counselling sessions. The ALJ's conclusion that this course of treatment somehow detracts from the credibility of plaintiff's allegations is not logical.

Lastly, plaintiff's point about the failure to identify impulse control disorder as a severe impairment is well-taken. Plaintiff acknowledges that the failure to designate a particular impairment as "severe" at Step 2 does not matter to the outcome of the case as long as the ALJ finds at least one severe impairment, continues on with the analysis, and considers the combined effect of all impairments, severe and non-severe. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012), citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010). Here, though, the ALJ's selective assessment of the medical evidence and erroneous credibility determination case doubt

on whether he adequately considered the combined effects of all of plaintiff's impairments, including impulse control disorder.

The ALJ's errors require remand. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Bryon K. R.'s application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED: JUNE 1, 2018**

<u>s/ <i>J. Phil Gilbert</i></u><br>
<b>J. PHIL GILBERT</b><br>
<b>DISTRICT JUDGE</b>